**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL BUTLER and RICHARD
BUTLER, as individuals and on behalf
of the people of the State of California,

        Plaintiffs,

        v.

ADOPTION MEDIA, LLC; ADOPTION
PROFILES, LLC; DALE R. GWILLIAM;
and NATHAN W. GWILLIAM,

        Defendants.
_____/

CASE NO. C 04-0135 PJH

**ORDER DENYING MOTION TO DISMISS**

        Defendants' motion for an order dismissing the above-entitled action came on for

hearing before this court on April 21, 2004.  Plaintiffs Michael Butler and Richard Butler

appeared by their counsel Neel Chatterjee, and defendants appeared by their counsel Glen

Lavy and Terry L. Thompson.  Having read the parties' papers and carefully considered their

arguments and the relevant legal authority, and good cause appearing, the court hereby

DENIES the motion for the reasons that follow and for those stated at the hearing.

**BACKGROUND**

        Defendants Adoption Media, LLC and Adoption Profiles, LLC are Arizona limited

liability companies.  Both companies offer adoption-related services and merchandise over

the Internet.  Defendants Dale Gwilliam and Nathan Gwilliam are officers and directors of the

LLCs.

United States District Court

For the Northern District of California

1    Among the websites operated by defendants are Adoption.com, ParentProfiles.com,

2    and AdoptionShop.com.  Adoption.com advertises itself as the #1 most popular adoption

3    website.  ParentProfiles.com is a site where prospective adoptive parents may post their

4    personal profiles in hopes of connecting with potential birth mothers.  AdoptionShop.com

5    describes itself as "the world's largest adoption store."  It sells adoption-related goods

6    including books, videos, blankets, toys, games, and clothes.

7    Plaintiffs Michael and Richard Butler are same-sex registered domestic partners who

8    have lived together for more than eight years.  Plaintiffs have been certified to adopt under the

9    laws of California by Independent Adoption Center ("IAC"), the largest and oldest open

10   adoption agency in California.  IAC also encouraged plaintiffs to consult Adoption.com in

11   order to increase their chances of adopting.

12   In October 2002, plaintiffs submitted an application to post their profiles on

13   ParentProfiles.com.  Three days after submitting their application, plaintiffs followed up with a

14   phone call, at which time Michael Butler spoke with Dale Gwilliam.  At that time, Dale Gwilliam

15   informed Michael Butler that defendants did not allow gay and lesbian couples to obtain

16   services from their websites.

17   Plaintiffs filed suit in the Superior Court of California, County of San Francisco, on

18   December 16, 2003, alleging violations of the Unruh Act, California Civil Code § 51; and also

19   alleging violations of California laws prohibiting unfair competition and false and misleading

20   advertising, California Business & Professions Code §§ 17200 and 17500.  Defendants

21   removed the action on January 12, 2004, alleging diversity jurisdiction.        Defendants now

22   seek an order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing the claims

23   asserted against them for lack of personal jurisdiction, or, in the alternative, an order pursuant

24   to Federal Rule of Civil Procedure 12(b)(6) dismissing the complaint for failure to state a

25   claim.  Defendants also assert that plaintiffs previously agreed to settle all disputes in an

26   Arizona forum, and to be governed by Arizona law.  Finally, defendants argue that applying

27   California law to defendants' conduct would violate the United States Constitution.

28

**DISCUSSION**

**I.      Applicable Law and Forum**

Initially, defendants argue that plaintiffs are bound by the terms of a written agreement containing a choice-of-law and -forum clause, and that this dispute must therefore be resolved under Arizona law and in the Maricopa County Superior Court.  The agreement at issue is the ParentProfiles.com Credit Card Authorization Form and Agreement ("the Authorization Form").  The Authorization Form states that, by signing and initialing in the appropriate boxes, plaintiffs agree to the terms of the ParentProfiles.com Service Agreement ("the Service Agreement").  The Service Agreement, in turn, contains the following provision:

> The laws of the state of Arizona shall apply to all matters relating to the interpretation or enforcement of this Agreement, and the courts of the Southeast Judicial District of the Superior Court of Maricopa County, Arizona shall have sole and exclusive jurisdiction over any disputes arising from this Agreement.

Plaintiffs, on the other hand, contend that the above provision is unenforceable as between plaintiffs and defendants because no contract was ever formed between the parties.  Plaintiffs argue that the defendants in fact rejected plaintiffs' application, and may not now rely on provisions of a nonexistent contract.

It is axiomatic that an enforceable agreement between two or more parties requires mutual assent.  1 Witkin, Summary of California Law, Contracts, § 119 (9th ed. 1987).  Plaintiffs signed the Authorization Form and returned it to defendants via facsimile on October 21, 2002, evidencing their assent to the terms of the Service Agreement.  Defendants, however, did not post plaintiffs' information on their website, as they were obliged to do under the Service Agreement.  Nor did defendants ever charge plaintiffs any monthly fees.  On October 24, 2003, plaintiffs spoke with defendant Dale Gwilliam, who explicitly told them that defendants did not allow gay and lesbian couples to obtain services from the Adoption.com family of websites.  Shortly thereafter, plaintiffs were prevented from accessing their personal profiles and information stored on the websites when their login codes and passwords stopped working.  Overall, defendants' actions indicate that they rejected plaintiffs' application.

United States District Court
For the Northern District of California

3

1    Having rejected plaintiffs' application, defendants cannot now use provisions of the

2  rejected agreement to bind plaintiffs to defendants' choice of forum.  As defendants

3  themselves point out, the Service Agreement states:  "Adoption.com reserves the right to

4  refuse to enter into this Agreement with the Adoptive parents for any reason."  Defendants

5  have, apparently, exercised that right.  However, this also means that defendants can't rely on

6  the forum-selection clause, which is a part of this same Agreement, to force plaintiffs into an

7  Arizona court.

8    Additionally, defendants' argument is refuted by the very terms of the Service

9  Agreement on which they rely.  The Service Agreement states that it "will go ito [sic] effect and

10  become binding as soon as this Agreement has been properly executed by you, as the

11  Adoptive Parents, and by an authorized representative of Adoption.com, and as soon as you

12  have properly paid for the services[.]"  Thus, three things must happen in order for the Service

13  Agreement to take effect: 1) the applicant must execute the agreement;

14  2) Adoption Media must execute the agreement; and 3) the applicant must pay for the

15  services.

16    In this case, by signing and mailing the Authorization Form, plaintiffs clearly executed

17  their portion of the Agreement.  However, there is no indication that defendants ever executed

18  the Agreement.  In fact, the subsequent actions of defendants – refusing to post plaintiffs'

19  profiles, not billing plaintiffs for any monthly charges, telling plaintiffs that they do not do

20  business with same-sex couples – give every indication that defendants refused to execute

21  the agreement.  Further, plaintiffs never paid for the services, another requirement in order for

22  the Service Agreement to take effect.  Without a valid contract between the parties, the

23  Service Agreement has no effect.  And if the Service Agreement is ineffective, the choice-of-

24  law and -forum clause contained therein is unenforceable with respect to plaintiffs.

25    Defendants maintain, however, that the Authorization Form is actually two separate,

26  distinct agreements: one which incorporates the terms of the Service Agreement – including

27  the forum selection clause – and obligates defendants to *consider* plaintiffs' application, and

28  one which involves payment of fees and requires defendants to *actually post* plaintiffs'

United States District Court

For the Northern District of California

1 profiles.  Hence, defendants assert, by initialing the box on the Authorization form, plaintiffs

2 were actually binding themselves to the terms of the Service Agreement in exchange for their

3 promise to *consider* posting their profiles on ParentProfiles.com.  To bolster this argument,

4 defendants point out that the Authorization Form requires two separate signatures or initials

5 for each spouse, one for each separate agreement.

6 　　　Nevertheless, defendants cite no law for this proposition, nor is this argument

7 supported by any facts.  Both the Authorization Form and the Service Agreement incorporate

8 each other by reference so frequently that it is nearly impossible to separate the two.  In

9 addition, the Service Agreement speaks only of defendants' obligation to use "best efforts to

10 display the Profile of the Adoptive Parents."  There is no reference in the Service Agreement

11 to a separate obligation to *consider* posting the profiles.

12 　　　In sum, this court finds that no contractual relationship existed between plaintiffs and

13 defendants.  Because there was no contractual relationship, plaintiffs cannot be bound by

14 provisions of a contract to which they were never a party.  Hence, the Service Agreement's

15 choice-of-law and -forum clause is ineffective with respect to plaintiffs.

16 **II.　　Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

17 　　　Next, defendants assert that this court has no personal jurisdiction over them, and that

18 the claims asserted against them should therefore be dismissed.  On a motion to dismiss the

19 complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that

20 the court has jurisdiction over the defendant.  <u>See</u>, <u>e.g.</u>, <u>Harris Rutsky & Co. Ins. Serv., Inc. v.</u>

21 <u>Bell & Clement Ltd.</u>, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  Where the court decides not to

22 hold an evidentiary hearing but rather decides the jurisdictional issue on the basis of the

23 pleadings and supporting declarations, this court must presume that the facts set forth therein

24 can be proven.  <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1085 (9th Cir.

25 2000).

26 　　　In California, the exercise of personal jurisdiction is allowed to the full extent permitted

27 by due process.  Cal. Civ. Code § 410.10.  Due process, in turn, requires that the non-resident

28 defendant have sufficient minimum contacts with the forum state such that the imposition of

United States District Court

For the Northern District of California

1   personal jurisdiction "does not offend traditional notions of fair play and substantial justice."

2   Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945).  The relationship between the

3   defendant and the forum state must be such that it is reasonable to require the corporation to

4   defend the particular suit that is brought there.  Id. at 317.

5           Depending on the nature of a defendant's contacts with the forum state, a court may

6   obtain either specific or general jurisdiction over the defendant.  Panavision Int'l, L.P. v.

7   Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  The existence of either general or specific

8   jurisdiction is independently sufficient for a finding of personal jurisdiction.  Id.

9           A.      General Jurisdiction

10          Defendants first claim that they have insufficient contact with California to support

11  jurisdiction under a general jurisdiction theory.  They claim their contacts with California are

12  too sparse and their presence in the state too limited to support a finding that they have

13  purposefully availed themselves of California's benefits and protections.

14          General jurisdiction exists when there are "substantial" or "continuous and systematic"

15  contacts between defendants and the forum state.  Gator.com Corp. v. L.L. Bean, Inc., 341

16  F.3d 1072, 1076 (9th Cir. 2003), en banc rev. granted, April 29, 2004.[1]  Courts in this circuit

17  have cautioned that the standard for establishing general jurisdiction is "fairly high."  Bancroft,

18  223 F.3d at 1086.  Courts generally rely on a two-fold inquiry to determine whether a

19  defendant's conduct rises to the level of substantial-continuous-systematic: 1) the court

20  evaluates the extent of defendant's "presence" in the forum state; and 2) the court determines

21  whether defendant actively solicited business within the forum state.  Gator.com, 341 F.3d at

22  1077.

23          1.      deliberate "presence" in the forum state

24          Traditionally, cases have focused on the extent to which the defendant has actual

25

26          [1]  Both sides in this dispute rely on the Ninth Circuit's decision in Gator.com, and the
27  court's ruling necessarily incorporates much of the Ninth Circuit's reasoning.  In the event that the
    Ninth Circuit subsequently changes its analysis of personal jurisdiction in the context of Internet-
28  related business, the court will entertain a motion for reconsideration from defendants in this case,
    to the extent appropriate.

physical presence within the forum state.  See, e.g., Perkins v. Benguet Consol. Mining Co.,

342 U.S. 437 (1952) (finding general jurisdiction when president of Philippines-based

corporation maintained office, kept company files, held director meetings, distributed salaries,

and conducted other company business in the forum state).  Courts generally look to whether a

party is incorporated in the forum state, holds a license in the forum state, has physical

facilities in the forum state, or designates an agent for service of process in the forum state.

Gator.com, 341 F.3d at 1076 (quoting Bancroft, 223 F.3d at 1086).  In this case, Adoption

Media is incorporated in Arizona.  It has no physical facilities in California.  It does not hold any

professional licenses in the state of California.  It has not designated an agent for service of

process in California.  Representatives for Adoption Media have made occasional business

trips from Arizona to California, but occasional forays into the forum state, without more, do not

subject a defendant to general personal jurisdiction.  Helicopteros Nacionales de Colombia,

S.A. v. Hall, 466 U.S. 408, 416, (1984) (defendant corporation not subject to general

jurisdiction in Texas despite periodically sending its CEO to Houston for meetings.)  In other

words, under traditional analysis, defendants have insufficient "presence" in California for

general jurisdiction purposes.

     This circuit, however, focuses on the economic reality of defendants' activities rather

than a mechanical checklist of factors which may give rise to defendants being subject to this

court's jurisdiction.  Gator.com, 341 F.3d at 1077.  In the internet context,  "presence" within

the forum state takes on a slightly different, albeit related, character.  Although "purposeful

availment" still remains the touchstone of the inquiry, see Glencore Grain Rotterdam B.V. v.

Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002), the analysis centers on

whether defendant's actions via the internet "approximate physical presence" within the forum

state.  Bancroft, 223 F.3d at 1086.

     In this case, plaintiffs claim that Adoption Media's various websites, and the business

conducted by means of those websites, give defendants a "virtual presence" in California

sufficient to permit the exercise of general jurisdiction.  Adoption Media counters by arguing

that its business over the internet constitutes doing business *with Californians*, as opposed to

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1   doing business *in California*; hence, it argues, this court cannot exercise general jurisdiction

2   over them.

3          In Gator.com., 341 F.3d 1072, the Ninth Circuit confronted the identical question of

4   whether defendant L.L. Bean's web activities amounted to a virtual presence in California.  In

5   that case the defendant, L.L. Bean, a nationally known mail-order retailer with its corporate

6   office in Maine, was subject to general jurisdiction in California despite the absence of virtually

7   any physical presence in California – it was not licensed or incorporated in California, had no

8   physical facilities in California, nor had appointed an agent in California.  Id. at 1074-79.  The

9   court based its ruling on L.L. Bean's extensive, sophisticated online "virtual store," where

10  users (including California residents) could purchase an array of L.L. Bean products by

11  selecting the product, submitting their mailing address, and providing their credit card

12  information.  Id. at 1078.  This virtual store, coupled with L.L. Bean's extensive marketing

13  campaign and "ongoing[ ] and sophisticated sales effort that has included California for a

14  number of years," was enough to confer general jurisdiction on the court.  Id.

15         In this case, Adoption Media operates a number of sites accessible by Californians.

16  These sites generally fall into one of two categories.  First, some of the sites allow for

17  information exchange between site users and Adoption Media, allowing users to post profiles,

18  ask questions, browse and post to online discussion forums, and browse the profiles of

19  others.  While Adoption Media charges fees for the right to participate in some of these

20  activities, no financial records or credit card numbers are exchanged online.  Rather, the user

21  must download an application form, provide the necessary information on the form (including

22  credit card number), and return the form via mail or facsimile to Adoption Media.

23         Adoption Media claims that these sites are "passive," essentially providing only an

24  opportunity for users to browse information, whereas the L.L. Bean site in Gator.com was

25  "active" because L.L. Bean was "clearly doing business over the internet," allowing for a two-

26  way exchange of information.  See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119,

27  1124 (W.D. Pa. 1997).  Defendants argue that this active/passive distinction is critical

28  because, whereas maintaining an active site may subject the site operator to general

United States District Court

For the Northern District of California

1   jurisdiction, see Gator.com, 341 F.3d at 1079, operating a passive site is never enough to

2   permit a court to exercise jurisdiction over an out-of-forum defendant, see Cybersell Inc. v.

3   Cybersell Inc., 130 F.3d 414, 418 (9th Cir. 1997).  L.L. Bean's site was designed to sell

4   products to consumers, allowing for the transfer of financial records and order information

5   online.[2]  Adoption Media's "passive" sites do not require such transfers.

6        If these information-only sites were Adoption Media's only "presence" in California, it

7   would almost certainly not be enough to permit this court to exercise general jurisdiction over

8   defendants.  However, Adoption Media has another type of site that parallels L.L. Bean's site

9   in Gator.com.  AdoptionShop.com champions itself as "the world's largest adoption store."

10  Through this site, users can order merchandise such as books, baby products, jewelry, toys,

11  videos, pillows, and blankets.  A user who has chosen to purchase a product must fill out an

12  online form asking for a mailing address, billing address, and credit card information.

13       There is no doubt that a significant amount of AdoptionShop.com's business comes

14  from California.  The issue, however, is not whether AdoptionShop.com does business with

15  Californians; rather, the issue is whether AdoptionShop.com does business in California.

16  Bancroft, 223 F.3d at 1086.  Gator.com held that even if a company's only contacts with a

17  forum state are via a virtual store, a court may exercise jurisdiction over the company if the

18  company's commercial activities are substantial enough to approximate physical presence.

19  341 F.3d at 1079.  The court in that case found that L.L. Bean's online store, which did

20  "millions of dollars in sales, driven by an extensive, ongoing, and sophisticated sales effort

21  involving very large numbers of direct email solicitations and millions of catalog sales," was

22  substantial enough to approximate physical presence.  Id. at 1080.

23       In this case, AdoptionShop.com has generated more than $100,000 in sales per year

24  over the past two years.  Of those sales, more than 11% were California sales.  While this is a

25

26       [2]Note that the designation of a site as "active" or "passive" is not a binary classification,
27  as both parties seem to think.  That is, there are degrees of activity and degrees of passivity.  See
    Zippo, 952 F.Supp. at 1124 (court notes that the "middle ground" between a completely active
28  site and a completely passive one is occupied by interactive Web sites where a user can
    exchange information with the host computer).

United States District Court

For the Northern District of California

1    significant percentage of overall sales, the gross sales in California during 2002 and 2003

2    totaled only $25,557.62.  Thus, while the interactivity of the AdoptionShop.com site is identical

3    to that of the L.L. Bean site in Gator.com, the actual "presence" of Adoption Media in

4    California is far less.  Taken alone, Adoption Media's commercial activities through

5    AdoptionShop.com are not substantial enough to approximate physical presence in

6    California, and therefore do not, by themselves, allow this court to exercise general

7    jurisdiction.

8                    2.       active solicitation of business in forum state

9           Presence in the forum state is not the only consideration for general jurisdiction,

10   however.  Courts will also consider the extent to which defendants have deliberately targeted

11   or solicited customers within the forum state.  Gator.com at 1080.  Even the court in

12   Gator.com, while purportedly confining its analysis to defendant's presence in the forum state,

13   could not help but examine defendant's solicitation and marketing activities in the same

14   context.  Id.  In that case, the court cited L.L. Bean's "extensive, ongoing, and sophisticated

15   sales effort," coupled with the company's direct email solicitations and magazine distribution

16   network, as evidence that L.L. Bean's contacts with California were "substantial" or

17   "continuous and systematic."  Id.

18          In this case, the declarations and affidavits support plaintiffs' contention that Adoption

19   Media specifically solicited business from California residents and businesses.  In their

20   responses to the interrogatories propounded by plaintiffs, defendants admit entering into

21   agreements "that might be construed as 'advertising or referral agreements'" with adoption

22   agencies located in California; admit to charging fees to California businesses for advertising

23   on defendants' websites; admit to exchanging emails with businesses located in California in

24   regard to contractual relationships; admit entering into agreement with IAC, the oldest and

25   largest open adoption center in California.  Plaintiffs have also provided copies of various

26   advertising agreements between Adoption.com and California companies, and evidence

27   showing that IAC responded to defendants' solicitations by entering into a monthly advertising

28   agreement with defendants.

1    Moreover, as part of this marketing effort, defendants allegedly entered into referral

2    agreements with adoption agencies such as IAC wherein the agencies would steer their

3    clients toward Adoption.com.  In this case, IAC referred plaintiffs to Adoption.com pursuant to

4    a pre-existing contract between IAC and Adoption Media.  Defendants also entered into

5    advertising agreements with various California companies wherein the companies agreed to

6    pay defendants in return for advertising space on the Adoption.com website.  With the extent

7    of defendants' efforts directed specifically toward California, the fact that defendants have

8    California customers does not appear "random," "fortuitous," or "attenuated."  Glencore, 284

9    F.3d at 1123.

10    Where the defendant purposefully directs activities to the forum state, jurisdiction is

11    presumptively reasonable, and the defendant will have to make a "compelling case" that other

12    considerations make the exercise of jurisdiction unreasonable.  Burger King Corp. v.

13    Rudzewicz, 471 U.S. 462, 477 (1985).  In this case, Adoption Media's virtual presence in

14    California, coupled with its marketing and soliciting efforts targeted at California individuals

15    and businesses, is enough to permit this court to exercise general jurisdiction over

16    defendants.

17              3.    reasonableness

18    Even assuming there are sufficient contacts to support general jurisdiction in a

19    particular case, the exercise of jurisdiction must still be reasonable.  Amoco Egypt Oil Co. v.

20    Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993).  There are seven reasonableness

21    factors to consider:  1) the extent of purposeful interjection; 2) the burden on the defendant to

22    defend the suit in the chosen forum; 3) the extent of conflict with the sovereignty of the

23    defendant's state; 4) the forum state's interest in the dispute; 5) the most efficient forum for

24    judicial resolution of the dispute; 6) the importance of the chosen forum to the plaintiff's interest

25    in convenient and effective relief; and 7) the existence of an alternative forum.  Id.  In this case,

26    most of these factors favor plaintiffs.

27    First, defendants have never been hesitant about interjecting themselves and their

28    business into California.  Phone calls, emails, advertising, travel, solicitations, and mailings

United States District Court
For the Northern District of California

1   have all been used by defendants to target customers in California.

2          Second, defending this suit in California would not appear to be a particular burden on

3   defendants, given the fact that while they are based in Arizona, representatives of the

4   companies travel to California periodically on business.  It would be far more burdensome to

5   require plaintiffs, as two individuals with no connection to Arizona, to travel to Arizona to

6   pursue their claims against defendants.

7          In addition, California has a significant interest in the outcome of the dispute since it

8   involves California law.  Furthermore, family law and adoption laws have traditionally been the

9   domain of the states, and California would have a significant interest in the outcome of the

10  case.  Simms v. Simms, 175 U.S. 162 (1899) (the subject of domestic relations belongs to

11  state, not federal law).  For these reasons, it would not be unreasonable to allow plaintiffs to

12  pursue their claim in this court.

13         Overall, defendants' online sales efforts, coupled with their active sales and solicitation

14  scheme undertaken in California, is enough to subject defendants to general jurisdiction in this

15  court.  Furthermore, reasonableness factors do not weigh against an exercise of jurisdiction

16  by this court.  Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is

17  DENIED.

18         B.       Specific Jurisdiction

19         As an alternative to general personal jurisdiction, defendants are also subject to this

20  court's specific personal jurisdiction.  This circuit applies a three-part test to determine

21  whether a defendant's activities are sufficiently related to the forum state to establish specific

22  personal jurisdiction: 1) the nonresident defendant must "purposefully avail himself" of the

23  privilege of conducting activities in the forum by doing some act or consummating some

24  transaction with the forum; 2) the claim must be one which arises out of or results from the

25  defendant's forum-related activities; and 3) the exercise of jurisdiction must be reasonable.

26  Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

27         Even a cursory glance at the facts of this case shows that defendants are subject to this

28  court's specific jurisdiction.  Plaintiffs submit copies of numerous agreements made between

United States District Court
For the Northern District of California

12

United States District Court

For the Northern District of California

1   Adoption.com and California businesses.  These agreements required defendants to

2   prominently feature the contracting party's ad on the Adoption.com website.  At least some of

3   these agreements involved California adoption agencies.  One such adoption agency was

4   IAC, the same agency that certified plaintiffs to adopt a child.  Overall, the large number of

5   agreements between defendants and California businesses and agencies supports plaintiffs'

6   assertion that defendants have purposefully availed themselves of the benefits and protections

7   of doing business in California.

8           Plaintiffs' claim also results from defendants' in-forum activities.  According to the

9   Declaration of Michelle Schiller, IAC's agreement with defendants included provisions that

10  encouraged IAC to refer its adoptive families to ParentProfiles.com.  When IAC's clients

11  posted their parent profiles on ParentProfiles.com, they (the client) would obtain discount

12  pricing if they were referred by IAC.  Pursuant to this arrangement, IAC referred plaintiffs to

13  Adoption.com.

14          Plaintiffs allege that based on the encouragement of "the adoption agency who certified

15  [plaintiffs]," – i.e., IAC – the plaintiffs went to the Adoption.com website and spent several days

16  preparing their application to become members of ParentProfiles.com.  However, defendants

17  rejected the application.  This action by defendants gave rise to plaintiffs' claims in this action.

18  In short, not only did defendants purposefully avail themselves of the privilege of conducting

19  business in the forum by entering into binding agreements with California adoption agencies,

20  but plaintiffs' claim resulted from one of these binding agreements.

21          Finally, the exercise of jurisdiction by this court over defendants is reasonable.  The

22  reasonableness test for specific jurisdiction and for general jurisdiction is identical, involving

23  the same seven-factor test.  Gator.com, 341 F.3d at 1080.  As the court has already

24  determined that jurisdiction would be reasonable in this case under general jurisdiction, the

25  same analysis applies here.

26  III.    **Defendants' Motion to Dismiss for Failure to State a Claim**

27          Defendants also argue that the complaint does not adequately allege violations of

28  California's Unruh Act and California's unfair competition and false advertising laws.  A

13

1   12(b)(6) motion to dismiss tests the sufficiency of a complaint.  <u>Navarro v. Block</u>, 250 F.3d

2   729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate only where "plaintiff

3   can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v.

4   Gibson</u>, 355 U.S. 41, 45-46 (1957).  A complaint may be dismissed where it presents no

5   legally cognizable theory, or if it fails to plead essential facts under a valid theory.  <u>Robertson

6   v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).  For the purposes of this

7   motion, the court must assume the truth of all factual allegations in the complaint, and must

8   construe them in the light most favorable to plaintiffs.  <u>Cahill v. Liberty Mutual Insurance Co.</u>, 80

9   F.3d 336, 337-38 (9th Cir. 1996).

10          A.      The Unruh Act Claims

11          Defendants first argue that plaintiffs have failed to state a claim under the Unruh Act.

12   The Unruh Act  prohibits "business establishments" from discriminating on the basis of "sex,

13   color, religion, ancestry, national origin, disability, or medical condition . . . ."  Cal. Civ. Code §

14   51.  However, while not explicitly covered in the text of the statute, the Unruh Act also prohibits

15   discrimination based on sexual orientation.  <u>Harris v. Capital Growth Investors XIV</u>, 52 Cal.3d

16   1142, 1155 (1991) (noting that sexual orientation is a protected category under the Unruh Act).

17   Plaintiffs' complaint specifically alleges that defendants refused to post plaintiffs' profiles due

18   to their status as a same-sex couple.

19          Defendants mount two challenges; this court disagrees with both.  First, defendants

20   argue that in the case of <u>Sharon S. v. Superior Court of San Diego County</u>, 113 Cal. Rptr. 2d

21   107, 115 (Ct. App. 2001), *depublished at* <u>Sharon S. v. Superior Court</u>, 2002 Cal. LEXIS 459

22   (Cal. Jan. 29, 2002), the court reversed an earlier trial court ruling and held that second-parent

23   adoptions were not within the purview of existing California law.  Defendants read this

24   decision to say that courts may not modify a state's adoption laws to permit adoptions that are

25   not in accordance with the express terms of statutes.  However, defendants' argument fails for

26   two reasons.  First, <u>Sharon S.</u> was depublished in 2002.  Second, and perhaps more

27   important, plaintiffs are not asking this court to modify California's adoption laws; rather,

28   plaintiffs are asking this court to enforce California's anti-discrimination laws.  Thus, the

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   principle articulated in <u>Sharon S.</u> is inapplicable.

2       Defendants' second challenge is that the case of <u>Beaty v. Truck Ins. Exchange</u>, 6 Cal.

3   App. 4th 1455, 1462 (Cal. App. 1992), held that the Unruh Act does not extend to marital

4   status discrimination.  Defendants argue that plaintiffs' marital status was the reason that

5   Adoption Media refused to accept their application.  However, the complaint states that

6   defendants "unlawfully refused to enter into contracts with plaintiffs because they are a same-

7   sex couple."  Complaint, ¶ 53; <u>see</u> <u>also</u> ¶ 46 (defendants "unlawfully have refused to allow

8   plaintiffs to become members because they are a gay couple").  The complaint does not

9   highlight marital status discrimination as the sole source of Unruh Act violations.  Hence,

10  plaintiffs' Unruh Act claim survives this motion.

11      B.    The Unfair Competition and False Advertising Claims

12      Defendants also allege that plaintiffs have failed to state a claim for unfair competition,

13  and false or misleading advertising.[3]  California's unfair competition law prohibits unlawful,

14  unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading

15  advertising.  Cal. Bus. & Prof. Code § 17200, et seq.

16      "Unlawful business activity proscribed under § 17200 includes anything that can

17  properly be called a business practice and that at the same time is forbidden by law."

18  <u>Farmers Ins. Exchange v. Superior Court</u>, 2 Cal.4th 377, 383 (1992).  Plaintiffs allege that

19  defendants' regular business practice of denying services to same-sex couples is unlawful

20  under the Unruh Act.  Since plaintiffs' Unruh Act claims survive this motion, plaintiffs' unfair

21  competition claim survives as well.

22      Claims alleging misleading or false advertising must show that a statement is

23  1) actually false or misleading, 2) known, or by exercise of reasonable care, should have been

24  known to be false or misleading by the perpetrator, and 3) reasonably relied upon by the

25  _____

26      [3]  Plaintiffs do not seek damages under these claims, so they are apparently seeking
27  injunctive relief.  However, some of the alleged "misleading advertising" has been either taken
    down or modified.  <u>See</u> Complaint, ¶ 43 (defendants allegedly stopped advertising that they
28  provide services to any prospective adoptive parent who was eligible to adopt in his or her state
    of residence).

United States District Court

For the Northern District of California

1    victim who incurs damages.  Day v. AT&T Corp., 63 Cal. App. 4th 325, 331-32 (1998).  The

2    test for whether a given advertisement is false is whether members of the public are likely to

3    be deceived.  Id.  Even advertising that is true, if cast in a form that has a likelihood or

4    tendency to deceive or confuse the public, may subject the defendant to liability under

5    California's false advertising law.  Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002).

6         In this case, plaintiffs allege that defendants' statements throughout their advertising

7    that Adoption Media values diversity, along with the absence of any statement notifying same-

8    sex couples that Adoption Media does not provide services to these couples, is deceptive.

9    Complaint, ¶ 67.  Further, plaintiffs assert that defendants have intentionally induced the public

10   to believe that Adoption.com websites are open to all prospective parents.  Id.

11        Defendants' only argument is that, "as a matter of law," statements about the

12   importance of diversity at Adoption Media "cannot mislead anyone to think that

13   ParentProfiles.com is saying that it accepts profiles from 'all prospective parents who have

14   met the qualifying criteria for their state of residence regardless of their sex, sexual orientation,

15   or marital status.'"  Neverthless, defendants cite no law for this "matter of law."

16        Plaintiffs' complaint contains at minimum the bare essential elements for a claim of

17   false advertising – namely, they point to specific statements that are allegedly misleading, they

18   allege that defendants were aware of their own discriminatory policies when the statements

19   were made, and they allege that they (plaintiffs) relied on the misleading statements in filling

20   out and submitting the application forms.  See Complaint, ¶¶ 65-67.  Whether or not

21   "promoting diversity" necessarily implies granting same-sex couples access to services is not

22   a question of law for this court to decide at this stage.  In short, plaintiffs have, for pleading

23   purposes, stated a claim for false advertising.

24   **IV.    Defendants' Constitutional Challenges**

25        Finally, defendants contend that the Unruh Act, as applied to defendants in this case, is

26   unconstitutional because it restricts interstate commerce and because it violates defendants'

27   rights to due process.

28

1          A.    Commerce Clause

2          Defendants claim that the Unruh Act, when applied to defendants in this context, is akin

3    to state regulation of interstate commerce.  The "dormant" Commerce Clause protects against

4    state regulations that "erect barriers against interstate trade."  Lewis v. BT Inv. Managers, Inc.,

5    447 U.S. 27, 35 (1980).  In determining whether a particular state statute erects barriers

6    against interstate trade, "the first step . . . is to determine whether it 'regulates evenhandedly

7    with only "incidental" effects on interstate commerce, or discriminates against interstate

8    commerce.'"  Oregon Waste Sys. v. Department of Envtl. Quality, 511 U.S. 93, 99 (1994).

9    Statutes that incidentally burden interstate commerce will be struck down only if "the burden

10   imposed on such commerce is clearly excessive in relation to the putative local benefits."

11   Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

12         Defendants cite several out-of-circuit decisions to support the proposition that

13   California's law improperly burdens interstate commerce.  However, each of the cases cited

14   dealt specifically with laws addressing Internet activities.  For example, in American

15   Booksellers Foundation v. Dean, 342 F.3d 96 (2d Cir. 2003) – heavily relied upon by

16   defendants – the law at issue, titled "An Act Relating to Internet Crimes," specifically prohibited

17   internet distribution of sexually explicit materials that were harmful to minors.  342 F.3d at 98.

18   The court found that the state law at issue projected Vermont's regulation onto the rest of the

19   nation.  Id. at 102-03.  Similarly, defendants' other cited cases held that state laws regulating

20   internet content were invalid.  See ACLU v. Johnson, 194 F.3d 1149 (10th Cir. 1999) (striking

21   down statute that regulated "[d]issemination of material that is harmful to a minor by

22   computer"); PSINet, Inc. v. Chapman, 167 F. Supp. 2d 878 (W.D. Va. 2001) (striking down

23   state law that criminalized the dissemination by computer of material that is harmful to minors);

24   Cyberspace, Com., Inc. v. Engler, 55 F. Supp. 2d 737 (E.D. Mich. 1999) (striking down state

25   law criminalizing distribution of sexually explicit material to minors via computer or internet).

26         By contrast, the Unruh Act contains no reference to Internet-content distribution.  It is an

27   anti-discrimination statute.  On its face, it poses no burden to interstate commerce.  Hence,

28   defendants' reliance on the above-cited Internet-content regulation cases is misplaced.

17

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Where a state statute is not discriminatory on its face, a statute that only incidentally

2    burdens interstate commerce is invalid only if the burdens posed are "clearly excessive in

3    relation to the putative local benefits." <u>Pike</u>, 397 U.S. at 142.  Here, the burdens posed on

4    defendants – allowing same-sex couples to be listed on their websites – do not clearly exceed

5    the benefits, which include providing prospective birth mothers with a greater number of

6    potential adoptive parents from which to choose, possibly leading to a greater likelihood that

7    children will be placed in a stable home.

8    In sum, the Unruh Act is does not facially discriminate against interstate commerce.  In

9    evaluating whether the Unruh Act incidentally burdens interstate commerce, the burdens, if

10    any, do not clearly exceed the benefits derived from applying the law.

11    B.    Due Process Clause

12    Finally, defendants assert that applying California law to defendants' lawful conduct in

13    Arizona would violate due process.  Defendants argue that the court cannot require

14    defendants – Arizona residents with an "Arizona-based website" – to conform to plaintiffs'

15    interpretation of California law.

16    Defendants' actions, however, were not entirely confined to the state of Arizona.  As

17    discussed in Section II above, defendants purposefully availed themselves of California's

18    benefits and protections by conducting business in California.  Further, the state in which a

19    tortious injury occurs has the predominant interest in regulating or affecting conduct within its

20    borders.  Levy, <u>California Torts</u>, Vol. 1 § 11.05 (March 2004).  Regardless of where Dale

21    Gwilliam was when he refused service to Michael Butler, the effect of the act was felt in

22    California.  Hence, California has the predominant interest in regulating the conduct.

23    Additionally, the Unruh Act affects only tortfeasors who purposefully avail themselves of

24    California's laws by doing business in California or inflicting harm on people within California.

25    Cal. Civ. Code § 51 (Only persons "within the jurisdiction of this state" are protected under the

26    Unruh Act).  As discussed in Section II above, defendants have never confined their activities

27    strictly within the borders of Arizona.  Defendants have traveled extensively, solicited business

28    in California, and promoted their services to California businesses and residents.  To say that

California's laws are applicable to defendants' activities affecting California businesses and residents is not a violation of defendants' due process rights.

### CONCLUSION

For the reasons set forth above, the court hereby DENIES the motion to dismiss. Defendants' objections to evidence are OVERRULED.

Defendants shall file their answer to the complaint no later than May 24, 2004. The parties shall appear for an initial case management conference on Thursday, July 8, 2004.

**IT IS SO ORDERED.**

Dated: May 3, 2004

_____/s/_____
PHYLLIS J. HAMILTON
United States District Judge

**United States District Court**
For the Northern District of California